**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED AIRLINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KIWI.COM, INC. and KIWI.COM S.R.O., <br><br> Defendants. | Civil Action No. _____ |

## **COMPLAINT**

Plaintiff United Airlines, Inc. ("United"), by its attorneys Riley Safer Holmes & Cancila LLP, for its complaint against Defendants Kiwi.com, Inc. and Kiwi.com s.r.o. (together, "Kiwi" or "Defendants"), alleges as follows:

## **NATURE OF THE ACTION**

1.      This is an action to enjoin the unlawful conduct of Kiwi, a rogue online travel agent ("OTA") that is deceptively advertising and selling itineraries that include United flights, without authorization from United, in violation of federal and state law, and in breach of numerous contracts.

2.      United is the world's largest airline.[1] Each year, it helps approximately 175 million people travel to more than 360 destinations across six continents. To accomplish this while providing a smooth, safe, and enjoyable travel experience for passengers requires an immense amount of effort and coordination from its over 100,000 employees and its many business partners

---

[1] Based on available seat miles.

across the globe. Over the past 90-plus years, United has worked tirelessly to establish itself as a brand that customers trust.

3.     One of the ways United protects its brand and its customers is by carefully choosing the companies with which it does business. As described below, United only authorizes certain OTAs to market and sell United airfares to consumers, and Kiwi **is not** one of them. In fact, while Kiwi was, at one time, authorized to market and sell United airfares, once United learned of some of Kiwi's deceptive and fraudulent conduct described herein, United revoked Kiwi's authorization, attempted to block Kiwi's access to United's data, and expressly demanded Kiwi cease and desist from obtaining and selling United's airfares.

4.      In the face of United's clear actions and demands, Kiwi was undeterred, continuing to market and sell United airfares without authorization, even finding new improper ways to obtain United's data and tickets. And Kiwi attempted to leverage its unlawful behavior into a commercial deal—insisting that all of United's problems would be solved if it would enter into a commercial agreement with Kiwi.

5.     Kiwi's deceptive and fraudulent conduct harms United's customers and irreparably harms United—eroding the reputation and customer goodwill that United has spent nearly a century building, creating significant operational challenges for United, and draining company resources. United brings this action to recover damages for *some* of the harm Kiwi has caused and, more importantly, to put a stop to Kiwi's brazen contractual and legal violations.

6.      United offers flights directly to consumers through its website, www.united.com, and its mobile application (together, the "United Digital Platforms"). Those resources provide consumers with access to ticket information, reservation details, and additional booking options for United flights and ancillary services directly under the famous UNITED brand. Those who

access United's website agree to be bound by the united.com User Agreement ("User Agreement"), attached hereto as **Exhibit 1**.

7.     United maintains the exclusive online distribution rights to sell United tickets to the general public through the United Digital Platforms, and it authorizes certain legitimate OTAs, such as Expedia and Orbitz, to offer United flights to customers. But United does not allow just any OTA to do so, and it does not allow OTAs or any other parties to access, utilize, or redistribute its fare and itinerary data or sell United flights without authorization.

8.     Kiwi operates an OTA that unlawfully trades on United's stellar worldwide reputation and goodwill, disrupts its operations, and systematically deceives consumers—all while masquerading as a legitimate business. Kiwi does this by falsely holding itself out as an authorized agent or extension of United; using United's familiar, recognizable, and valuable trademarks without permission; advertising itineraries that include United flights to consumers in deceptive and unauthorized ways; accessing United's website to obtain United's ticketing and fare and inventory information and/or confirm and complete bookings in violation of United's policies and agreements; and cheating consumers by charging exorbitant fees for ancillary products and services that United provides at a lower price or, in some instances, for no charge at all.

9.     In addition to improperly accessing the United's website and selling United flights without authorization, Kiwi markets "travel hacks," which, in reality, are itineraries Kiwi knows are prohibited by United (and other airlines, for that matter), because those itineraries can cause significant harm to customers as well as United. Specifically, Kiwi markets so-called "self-transfer" and "hidden-city" itineraries, both of which are prohibited by United's Contract of Carriage (attached hereto as **Exhibit 2**) and its Booking and Ticketing Policy (attached hereto as **Exhibit 3**) because of the risks posed to consumers and to airline operations. Kiwi nonetheless

intentionally breaches the Booking and Ticketing Policy by selling these itineraries and intentionally induces consumers to breach United's Contract of Carriage by purchasing these itineraries. And despite luring consumers in with a promise of savings, Kiwi then imposes draconian policies and exorbitant surcharges—all to the detriment of the consumer.

10. Moreover, because Kiwi knows what it is doing is wrong, it engages in deceptive and fraudulent steps to conceal its misconduct from United. Kiwi masks its activity through a variety of means, including by creating fake email addresses and false payment information to deceive United's internal systems and prevent United from detecting Kiwi's unauthorized bookings.

11. One way Kiwi is able to deceive consumers is by using United's valuable trademarks to falsely imply that it is affiliated with United and is authorized to sell the itineraries including United flights that it displays on its website. Kiwi has accomplished this in several ways, including by improperly displaying United's Globe Logo as well as the consumer-trusted "UNITED" and "UNITED AIRLINES" marks on its website and mobile app. Kiwi understands that its illicit use of United brand indicia plays on consumer trust in and loyalty to United, thereby making consumers more susceptible to being duped by Kiwi and resulting in frustration, inconvenience, and financial loss by the consumers and concomitant reputational damage to United.

12. United has tried to stop Kiwi's illegal practices without resorting to litigation. When United became aware of the substantial harms Kiwi was causing, it revoked Kiwi's ticketing authority and its access to United's data. But Kiwi circumvented those measures and found new ways to infiltrate United's systems. If that were not enough, when United sent a cease-and-desist letter to Kiwi on October 24, 2024 that identified Kiwi's unlawful conduct and demanded that it

cease immediately, Kiwi refused to cease its misconduct (and, notably, did not refute that it was engaging in the misconduct). Instead, Kiwi attempted to leverage its misconduct to extort United to enter into a commercial agreement with Kiwi. A copy of the cease-and-desist correspondence between United and Kiwi is attached hereto as **Exhibit 4**.

13.     United is entitled to decide who can market and sell United's services to consumers. United does not want to do business with Kiwi, and Kiwi cannot use unlawful conduct to bully United into a commercial agreement. Despite United's efforts, Kiwi has not stopped its unlawful conduct, and it will continue to market and sell United airfares without authorization and harm both consumers and United absent protection from this Court. This action seeks to hold Kiwi responsible for the multitude of harms inflicted on consumers and United by Kiwi's false advertising, deceptive business practices, breaches of contract, tortious interference with contract, and trademark infringement.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 because United asserts claims for false advertising, trademark infringement, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1125 and 1114. The Court has supplemental and pendent jurisdiction over the related state-law claims under 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Kiwi because, by accessing and booking tickets through united.com, Kiwi agreed to the User Agreement. Through that agreement, Kiwi "consent[ed] to the exclusive jurisdiction and venue of courts in Cook County, Illinois, U.S.A., in all disputes arising out of or relating to the use of [united.com]." *See* Ex. 1.

16.     Jurisdiction over Kiwi is also proper because it has purposefully engaged in commercial activity in Illinois and thereby invoked the protections and benefits of its laws. Kiwi

has committed torts in Illinois and in this District by booking United tickets for Illinois-based customers, soliciting business from Illinois residents, selling flights to Illinois residents, and offering and selling flights to, from, and within Illinois.

17. Because United's principal place of business and headquarters is in this District, the injuries alleged herein from Kiwi's infringement and unlawful conduct foreseeably occurred in this District.

18. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to United's claims occurred in this District, including the marketing and sale of United flights by Kiwi within this District.

## THE PARTIES

19. Plaintiff United Airlines, Inc. is a Delaware corporation with its headquarters and principal place of business located at 233 South Wacker Drive, Chicago, Illinois 60606. United is the largest and one of the most recognizable airlines in the world, providing domestic and international air transportation services to millions of passengers annually.

20. Defendant Kiwi.com, Inc. is a Delaware corporation with its principal place of business at 1221 Brickell Avenue, Suite 1115, Miami, Florida, 33131.

21. Defendant Kiwi.com s.r.o. is a limited liability company organized under the laws of the Czech Republic with its registered office as Rohanské nábřeží 678/25, 186 00, Prague 8-Karlín, Czech Republic.

## FACTUAL ALLEGATIONS

**I.    United's Digital Platforms and Proprietary Flight and Fare Content.**

22. In the highly competitive airline industry, customer service and customer loyalty are paramount. United has built its global recognition and maintained considerable customer goodwill through decades of industry leadership and dedication to safe, reliable, and quality air

transportation provided with the highest level of customer service. The UNITED name is recognized globally by consumers as signifying United as the exclusive and trusted source of commercial air travel and related services offered under the UNITED designation and other UNITED-formative marks. United also invests substantially in maintaining and protecting its proprietary flight and fare content, which includes dynamic fare information, schedules, seat inventory, and associated travel services.

23.     United's official website, united.com, serves as the primary platform for consumers to access fare and schedule data, make reservations, manage bookings, and engage with United's loyalty program.

24.     United's Mobile App serves as an alternative but crucial platform for consumers to access information similar to that found on united.com via mobile phones and other mobile devices.

25.     The content on the United Digital Platforms—including fare data, ticketing services, promotional offerings, and customer information portals—is the result of a significant investment of both financial and technological resources.

26.     For that reason, United has long controlled access to, and use of, the United Digital Platforms and its fare, schedule, and inventory data generally. For instance, United prohibits travel agencies or other businesses from the unauthorized sale of United flights, and the terms of use for the United Digital Platforms likewise prohibit their use for any commercial purpose without United's express authorization. Indeed, all authorized users of the website and app must adhere to specific restrictions governing data usage, unauthorized redistribution, commercial exploitation, and repurposing of content for competitive purposes.

27.     United permits only authorized agents and certain other authorized recipients to access and use its fare, schedule, and inventory content for commercial purposes, and that authorization is subject to strict terms and conditions, including prohibitions against sharing the data with unauthorized entities. United takes these steps to protect customers and because the development and maintenance of the content relating to its products and services has required an immense amount of time, money, and specialized resources.

## II.     United's User Agreement, Booking and Ticketing Policy, and Contract of Carriage.

### A.     The User Agreement.

28.     To protect its valuable data and other content, and to provide quality experiences to its customers, United requires any user that accesses and uses united.com to agree to be bound by the User Agreement. *See* Ex. 1. Access or use of united.com constitutes acceptance of the User Agreement, which is a valid and enforceable contract between United and any user that accesses and uses its website.

29.     Accordingly, when Kiwi accesses and uses united.com to book flights, choose seat assignments, or extract United's fares, schedules, and/or other inventory data, Kiwi agrees to be bound by the terms of the User Agreement.

30.     The User Agreement "is governed by the laws of the State of Illinois," and requires the user to "consent[] to the exclusive jurisdiction and venue of courts in Cook County, Illinois [] in all disputes arising out of or relating to the use of th[e] website." *Id*.

31.     In addition, the User Agreement makes clear that "[a]ll content of th[e] website" is owned by United and/or its suppliers, including but not limited to all trademarks, trade names, logos, and service marks (the "Marks") displayed on the website. *Id*. It also prohibits users of the website from making use of the Marks without United's prior written consent or the consent of such third parties that may own the Marks. *Id*.

8

32.     The User Agreement also provides that the "website is for the User's personal, noncommercial use only," and requires that the user "agree[] not to modify, copy, alter, distribute, transmit, display, perform, reproduce, publish, license, create derivative works from, transfer, or sell any information, software, products or services obtained from this website without United's prior written permission." *Id*. The user is likewise prohibited from "mak[ing] any speculative, false or fraudulent purchase or reservation," and must "agree[] that the reservation features of th[e] website shall be used only to make legitimate reservations or purchases." *Id*.

33.     Nor is the user permitted "to use any robot, spider, other automatic device, or manual process to monitor or copy this website or the content contained therein or for any other unauthorized purpose without United's prior written permission." *Id*.

**B.      The Booking and Ticketing Policy.**

34.     United's Booking and Ticketing Policy outlines the procedures and rules for reserving and purchasing flights with United. The policy applies to "[a]ny travel agency, Accredited Subscriber, Non-Accredited Subscriber, CTD, CRS/GDS subscriber, and any other person or entity accessing United's internal reservation system content via the Internet or any other electronic means." Ex. 3 at Article II, ¶ 37 (defining "Travel Service Provider").

35.     Among other things, the policy sets forth a number of "Prohibited Practices," which include, among other things, utilizing "Hidden Cities/Points Beyond Ticketing, Impossible/Illogical Booking, No-Show, Off Plating and Throwaway Ticketing, circumvention of United's Married Segment control logic, United inventory access violations and any violation of United's Contract of Carriage." *Id.* at Article II, ¶ 31.

36.     The Booking and Ticketing Policy also requires Travel Service Providers to comply fully with all applicable laws and regulations in connection with the issuance and sale of United tickets." *Id.* at Article III, ¶ 6.

37.     Applicable regulations include 14 C.F.R. § 399.85, which requires, among other things, that "[e]ach U.S. air carrier, foreign air carrier, and ticket agent . . . that has an online platform marketed to U.S. consumers where it advertises or sells air transportation must clearly and conspicuously disclose on its online platform the accurate fee that applies, if any, for all critical ancillary services." 14 C.F.R. § 399.85(c)(1). The DOT defines critical ancillary services as "any ancillary service critical to a customer's purchasing decisions." Critical ancillary services include "transporting the first checked bag, the second checked bag, or a carry-on bag, [and] the ability for the customer to cancel or change a reservation." 14 C.F.R. § 399.85(a). Accurate information about critical ancillary services "must be provided the first time that fare and schedule information is disclosed after a consumer conducts a passenger-specific itinerary search or an anonymous itinerary search." 14 C.F.R. § 399.85(c)(1).

38.     14 C.F.R. § 399.85 also requires any U.S. air carrier, foreign air carrier, or ticket agent that has an online platform marketed to U.S. consumers where it advertises or sells air transportation to "accurately, clearly, and conspicuously disclose on its online platform, before ticket purchase," certain information about its change and cancellation policies, including:

> A statement disclosed clearly and conspicuously on the last page of the booking process on allowing the reservation to be held at the quoted fare without payment, or cancelled without penalty, for at least twenty-four hours after the reservation is made, consistent with a carrier's customer service plan in § 259.5(b)(4) of this chapter and consistent with a ticket agent's policy. A ticket agent that has a policy of not allowing a 24-hour hold or cancellation must disclose that information clearly and conspicuously on the last page of the booking process.

14 C.F.R. § 399.85(f).

39.     14 C.F.R. § 399.85 further requires any U.S. air carrier, foreign air carrier, or ticket agent with an online platform marketed to U.S. consumers where it advertises or sells air transportation to "clearly and conspicuously disclose the following notice on any page or step of the booking process in which a consumer is offered a seat selection for a fee: 'A seat is included

in your fare. You are not required to purchase a seat assignment to travel. If you decide to purchase a ticket and do not select a seat prior to purchase, a seat will be provided to you without additional charge when you travel.'" 14 C.F.R. § 399.85(h).

40.     Because Kiwi is a travel agency, albeit an unauthorized one, and because it is "accessing United's internal reservation system via the Internet or any other electronic means" when it books and/or tickets air transportation on United, Kiwi is subject to the Booking and Ticketing Policy. By its "continued booking and/or sale of air transportation on United," Kiwi agreed to be bound by "the terms and conditions set forth" in the Booking and Ticketing Policy. *See* Ex. 3, at Article VII, ¶ 1.

**C.     The Contract of Carriage.**

41.     United's Contract of Carriage ("COC") is an agreement between the airline and its passengers that governs the transportation of passengers and baggage by United. Ex. 2.

42.     The COC contains important provisions regarding ticketing, cancellations, delays, baggage handling, refunds, and many other matters. It is a federally regulated agreement that serves to protect both the airline and the customer by clearly setting out each party's rights and obligations toward one another. Passengers agree to the terms of the COC by purchasing a ticket or accepting transportation from United.

43.     Among other things, the COC specifically prohibits "[a]ny practice that United believes, in its sole discretion, is exploitative, abusive or that manipulates/bypasses/overrides United's fare and ticket rules." *See* Ex. 2 at Rule 6.J(6) ("Prohibited Practices").

44.     As with the Booking and Ticketing Policy, the COC specifies that "Hidden Cities Ticketing" is one such prohibited practice. *Id.* at Rule 6.J(1).

**III.    United's Valuable Trademarks.**

45.    For nearly 100 years, United has used and been known by its moniker UNITED as well as by its trade name "United Airlines." Over that time, and as one of the oldest commercial airlines in the United States, United has also become one of the largest, most well-known and respected airlines globally.

46.    With approximately 100,000 employees, United serves 217 domestic and 147 international destinations in 75 countries and along with its famous UNITED name since at least 1929 has been continuously and exclusively using many other UNITED-formative marks, including UNITED AIRLINES since at least 1974.

47.    The UNITED name also operates as the domain name for the United website at united.com and features prominently on the United Mobile App:



48.     United also has used registered designs such as its Globe Logo to promote its services throughout the world, including as the icon for its Mobile App:





49.     United devotes significant time, money, and effort to advertising, promoting, and protecting its products and services using its trademarks throughout the world.

50.     For instance, to protect its investment in its intellectual property, United registers its trademarks in the U.S. Patent and Trademark Office ("USPTO") on the Principal Register and also registers the marks in many other countries where United operates. United has trademarks registered in 137 countries outside of the United States and registrations incorporating the term UNITED in 127 countries outside of the United States.

51.     The registered marks include, but are not limited to, the following:

| Trademark | Services |
|---|---|
| <br><br>Filing date: October 23, 2019<br>Registration date: April 28, 2020<br>Date of first use: November 2017<br><br>Reg. No. 6042676 | IC039: Transportation of persons, property and mail by air; airline check-in services; travel ticket reservation services; online transportation reservation services; providing a website featuring information on travel; travel information; and booking of tickets for travel |
| UNITED<br><br>Filing date: December 3, 1953<br>Registration date: March 31, 1959<br>Date of first use: February 1, 1959<br><br>Reg. No. 676462 | IC039: Transportation of persons, mail, and property by air |
| UNITED AIRLINES<br><br>Filing date: April 27, 1992<br>Registration date: February 2, 1993<br>Date of first use: June 17, 1974<br><br>Reg. No. 1750451 | IC039: transportation of persons, property and mail by air. |
| <br><br>Filing date: May 19, 2016<br>Registration date: January 3, 2017<br>Date of first use: October 1, 2010<br><br>Reg. No. 5114233 | IC039: Transportation of persons, property and mail by air |
| <br>Filing date: October 23, 2019<br>Registration date: April 28, 2020<br>Date of first use: November 2017<br><br>Reg. No. 6042677 | IC039: Transportation of persons, property and mail by air; airline check-in services; travel ticket reservation services; online transportation reservation services; providing a website featuring information on travel; travel information; and booking of tickets for travel. |

| Trademark | Services |
|---|---|
| **UNITED**<br><br>Filing date: November 20, 2023<br>Registration date: October 15, 2024<br>Date of first use: February 1, 1929<br><br>Reg. No. 7536244 | IC039: Transportation of persons, property and mail by air; airline check-in services; travel ticket reservation services; online transportation reservation services; providing a website featuring information on travel; travel information; and booking of tickets for travel; developing, arranging, and making reservations of vacation and tour packages for others, in the nature of making reservations and bookings for transportation; travel agency services, namely, making reservations and bookings for transportation, flights, and automobile rentals; providing a website featuring information on travel; packaged vacation booking services in the nature of making reservations and bookings for transportation; coordinating travel arrangements for individuals and for groups. |

52.     United is the exclusive owner of all rights, title, and interest to the registered marks set forth in Paragraph 51 (the "United Marks").

53.     And, as set forth above, United seeks to protect the United Marks by requiring users of its website to agree that "[a]ll copyrights, trademarks, trade names, logos, and service marks (the 'Marks') displayed on this website are United's property or the property of other third parties . . . [and that the] [u]ser is not permitted to use these Marks without United's prior written consent." *See* Ex. 1.

54.     In addition to its registered and contract rights, United has strong common-law rights in the United Marks by virtue of extensive use and promotion in commerce. The United Marks have achieved widespread domestic and global recognition and have become a hallmark of United's goodwill.

55.     The United Marks serve as unique and famous identifiers for United and its transportation and travel-related services. Over several decades, United has invested millions of dollars in worldwide advertising and marketing to develop and establish the fame, reputation, and

goodwill of the United Marks. For example, United's advertising expenses were $221 million in 2023 and $165 million in 2022.[2] United advertises through a variety of media across the world, including through the internet, television, radio, newspapers, magazines, and direct mail, among others.

56.     The United Marks are distinctive designations of the source of origin of United's services. Moreover, the United Marks are exclusively and uniquely associated with United and its global reputation for safe, reliable, and high-quality air transportation. As a result, the United Marks are assets of substantial value.

57.     Due to United's extensive and exclusive continuous advertisement, promotion, and use, the United Marks are famous, well-known, and widely recognized by the general consuming public as a designation of the source of United's goods and services.

**IV.    Kiwi's Misconduct.**

   **A.    Kiwi Wrongfully Accesses and Uses United's Digital Platforms to Enable its Deceptive Conduct.**

58.     Upon information and belief, both Kiwi.com and Kiwi.com s.r.o. control and direct Kiwi.com and the Kiwi mobile apps, which are the digital platforms that Kiwi uses to market, among other things, airline flights and itineraries on many U.S.-based airlines, including United.

59.     Although there are certain authorized agents who are permitted to access and display United's ticketing and fare information, and to book and ticket air transportation on United, Kiwi is not one of them. In fact, United affirmatively revoked and blocked Kiwi's access due to some of the misconduct alleged herein.

60.     Still, Kiwi refuses to take "no" for an answer, continuing to access and sell United airfares. It holds itself out as an agent of United by wrongfully accessing and using United's

---

[2] *See* https://ir.united.com/node/31211/html

proprietary data to enable its unauthorized and deceptive sales of tickets for United flights. To accomplish this without United's consent, on information and belief, Kiwi uses a variety of electronic mechanisms to access and interact with United's website, allowing it to obtain and/or confirm United's fare, schedule, and inventory information to sell United airfares on Kiwi's own website and mobile apps.

61.     Among other things, on information and belief, Kiwi has improperly harvested and scraped data from the United website. Such practices are expressly prohibited by the User Agreement, in which Kiwi "agree[d] not to use any robot, spider, other automatic device, or manual process to monitor or copy this website or the content contained therein or for any unauthorized purpose without United's prior written permission." *See* Ex. 1.

62.     United has taken measures to prevent Kiwi from accessing and harvesting United fares and flight schedules, and selling United flights without authorization, but United's efforts have not deterred Kiwi. Kiwi has continued to access and/or scrape the United website and has taken the additional step of illicitly obtaining United's data and tickets from third-party ticket consolidators and other travel agencies. In doing so, Kiwi knowingly induces these consolidators and agencies to breach *their* contracts with United, including but not limited to the Booking and Ticketing Policy, which prohibit these third parties from sharing United's data and tickets with unauthorized OTAs like Kiwi.

**B.     Kiwi's Advertising and Sale of Tickets for United Flights Deceives and Defrauds Consumers.**

63.     In its advertising and sale of tickets for United flights, Kiwi engages in a multitude of unlawful practices designed to confuse, deceive, mislead, and ultimately defraud consumers into paying Kiwi more money for an inferior product. These practices harm consumers, but also harm United by eroding consumer goodwill and tarnishing United's reputation.

64.     Kiwi's misrepresentations to consumers regarding the nature of its services, purported United policies and charges are severely concerning not only due to the reputational damage sustained by United as a result, but also due to Kiwi's efforts to dupe the public into believing its services and relationship with United are legitimate and genuine, all while pocketing unsuspecting consumers' hard-earned money.

65.     For example, Kiwi's website claims that Kiwi "hack[s] the system" so that customers can "[b]ook cheap flights other sites simply can't find":



66.     Kiwi also assures customers that, "[t]hanks to our unique Kiwi-Code, we're able to find cheap travel options other search tools can't, so our customers will never have that nagging doubt they've missed out on a better deal elsewhere."[3]

67.     These statements are literally false. In fact, Kiwi offers itineraries on United flights at prices that are *higher* than the price at which a customer could book the identical itinerary on United's website, *and* without the amenities to which the customer would be entitled if she booked the itinerary directly through United.

68.     For example, on August 6, 2025, Kiwi's website advertised the following "Popular destinations from Chicago":

---

[3] https://www.kiwi.com/en/pages/content/about (last viewed August 6, 2025).



69.     Clicking on the image labelled "New York: Tickets from $88" took the customer to a page offering the following itinerary, which Kiwi advertised as the "Cheapest" flights available from United:



70.     According to Kiwi, the tickets being offered on the identified United flights would not allow the customer to bring a carry-on bag:



71.     Instead, Kiwi offered the customer the option to pay for a checked bag, at an additional cost of $91:



72.     In truth, however, on August 6, 2025, a customer could have purchased tickets on united.com for the identical United flights advertised by Kiwi, for $117—*less* than the purportedly "cheapest" price offered by Kiwi at $199:





73.     And if the customer *did* want the ability to bring a carry-on bag, booking through United provided a cheaper alternative than paying to check a bag through Kiwi, paying $187 instead of $290:







74.    Another way in which Kiwi confuses, deceives and misleads customers is by charging baggage fees that are excessive and grossly inflated from the amount that United requires consumers to pay or even when United would not charge a baggage fee:

*Compare* **Kiwi.com**



*with* **United.com**



75.    Worse yet, when a customer pays Kiwi's excessive baggage fee in a circumstance where United *does* charge a baggage fee, Kiwi sometimes fails to pay the United baggage fee. As

a result, when that customer shows up at the airport, they may have to pay a fee to United to check their bag, even though they already have paid Kiwi.

76.     Similarly, Kiwi also induces customers to pay extra fees for a seat assignment but may not actually book the specified seat for the customer (which Kiwi does by improperly accessing United's website) until hours after Kiwi has purported to "confirm" the seat assignment to the customer. Indeed, on information and belief, Kiwi sometimes charges the customer for a seat assignment even when the seat is not available. What's worse, when the customer later learns that the seat assignment Kiwi confirmed is actually unavailable, Kiwi lies to the customer and disparages United—falsely stating that the seat assignment could not be reserved due to an issue with United's policies. In reality, the seat assignment could not be reserved because Kiwi is not an authorized OTA and can only book the seat assignments through unauthorized access of United's website.

77.     Additionally, while United's policies provide consumers with full refunds for cancelled trips under certain circumstances (including fully refunding tickets cancelled within 24 hours of purchase), Kiwi charges consumers additional money for purported cancellation and refund protection even though Kiwi, on information and belief, does not offer a full refund under **any** circumstances.

78.     But that does not stop Kiwi from misleading customers by purporting to offer the option to rebook or cancel their trip up to 48 hours before departure:



79.     On information and belief, however, when customers attempt to obtain a refund more than 48 hours before departure, in most instances they are only offered 10 EUR in Kiwi.com credit:

**Ticket types**

**Saver Ticket**

- It's not possible to change your trip. If your existing trip doesn't work for you anymore, you can cancel it and book a new one.
- If you cancel, you'll get €10 in Kiwi.com Credit that you can use for a new booking — but only when your booking costs more than €20.

**Standard Ticket**

- If you change your trip, you'll only pay the difference for the new booking. We'll cover the rest.
- If you cancel, you'll get €10 in Kiwi.com Credit that you can use for a new booking — but only when your booking costs more than €20.

**Flexi Ticket**

- If you change your trip, you'll only pay the difference for the new booking. We'll cover the rest.
- If you cancel, you'll get back 80% of the price you paid for the carrier ticket and their services, such as bags or seats. You can choose how to receive it — either as a monetary refund or in Kiwi.com Credit.

80.     This occurs even when the refund request is made within 24 hours of booking—a scenario where United would issue a full refund if the customer had booked directly. And contrary to Department of Transportation regulations, Kiwi does not "clearly and conspicuously" disclose that it will not provide a full refund for a reservation that is cancelled within 24 hours of booking.

81.     Moreover, Kiwi purports to override United's refund policies—set forth in United's COC—and discourages customers from seeking a refund directly from United. This intentionally deceptive conduct harms consumers because, in instances where United's refund policy is more generous than the refund options sold by Kiwi, Kiwi collects the larger refund amount from United and pockets the difference rather than returning it to the consumer:

**Fare/Ticket Type** section acknowledges
Kiwi overrides the carrier refund policy

There are a couple of details you should know before you change or cancel:

It's only possible to change your trip once under Standard and Flexi Ticket conditions. After you make the change, Saver Ticket rules will apply for all other changes or cancellations.

When you cancel and request a refund with us, we'll refund you depending on your ticket type *regardless of the carrier policy*. If the carrier provides any further refund on top of this amount, *we have the right to keep it* as a fee for our service.

**Can I cancel with the carriers directly?**

You might choose **not to cancel your ticket with us**, and go directly to the carriers. But their policies and the way we book trips vary, so it might not always be possible to get a refund.

82.     On information and belief, Kiwi sometimes pockets the *entire* refund. United has received complaints from customers who claim they received no refund even after United has returned the funds to the form of payment Kiwi provided to United to purchase the tickets.

**C.      Kiwi Sells Prohibited Itineraries That Create Confusion and Other Risks for Customers and United.**

83.     Kiwi markets itself as providing customers the "travel options that airlines don't want you to see" and providing the consumer with access to "loopholes." But, in reality, it does no such thing. Instead, it offers consumers prohibited itineraries that create risks for the consumer and to airline operations.

84.     Specifically, Kiwi markets and sells to consumers what are known as "self-transfer" and "hidden-city" itineraries. A "self-transfer" itinerary is an itinerary in which the individual books two or more flights separately (with different booking references) to reach a destination, rather than a single connected flight. A "hidden-city" itinerary is one where the individual books a flight with a layover as their intended destination, and then does not proceed to the itinerary's final destination.

85.     Because of the harms these itineraries cause, both practices are prohibited by United's Booking and Ticketing Policy. The Booking and Ticketing Policy prohibits anyone who

is "accessing United's internal reservation system via the Internet or any other electronic means" from engaging in "Hidden Cities/Points Beyond Ticketing, Impossible/Illogical Booking, No-Show, Off Plating and Throwaway Ticketing, circumvention of United's Married Segment control logic, United inventory access violations and any violation of United's Contract of Carriage." *See* Ex. 3 at Article II, ¶ 31.

86.     Because of the harms these practices cause, they are also prohibited by United's COC, which bars "[a]ny practice that United believes, in its sole discretion, is exploitative, abusive or that manipulates/bypasses/overrides United's fare and ticket rules," and explicitly references "hidden cities ticketing" as a prohibited practice. *See* Ex. 2 at Rule 6.J.

87.     These practices are prohibited by most commercial airlines, and they are prohibited for a reason. The itineraries Kiwi promotes and sells harm consumers and United in numerous ways, including flight delays for other passengers and causing United to incur costs associated with delays, re-booking challenges, and related issues created by passengers attempting to use these prohibited itineraries. United also experiences operational disruptions when customers' bags are checked to destinations they are not intending to reach. More importantly, it irreparably harms United's goodwill with the customers who experience difficulties caused by these prohibited practices. Customers associate these negative experiences with United (rather than or in addition to Kiwi) and often blame United (rather than or in addition to Kiwi) for their difficulties.

88.     The harms caused by these prohibited itineraries are numerous. For example, in keeping with its goal of providing excellent customer service, United will sometimes hold a connecting flight for a passenger who has not arrived at the gate by the time boarding was scheduled to conclude. With respect to hidden-city bookings, however, those passengers have no intention of *ever* showing up at the gate because they are skipping the final leg of their flight. Thus,

United might delay the flight unnecessarily and expend time and resources trying to track down a passenger who has no intention of flying. On information and belief, Kiwi has caused United to unnecessarily delay flights and expend time and resources due to hidden-city bookings through Kiwi.com.

89.     Hidden-city ticketing also creates significant issues with respect to baggage. When passengers have a connecting flight, baggage is checked to the final destination. Passengers with a hidden-city ticket who check their bags will disembark and stay in the layover city, while their baggage continues on. The customer who has undergone the inconvenience of "lost" baggage blames United for the difficulties rather than Kiwi and United also has to spend resources tracking down and returning the checked baggage. Even where the customer knows of United's baggage practices and therefore brings only a carry-on bag for their hidden-city itinerary, United and the customer can still run into problems when, for example, overhead space is full, and carry-on baggage must be checked at the gate.

90.     The following are just a few representative examples from United's on-the-ground customer service team of the baggage-related customer complaints that arise from these prohibited itineraries where it is United that must expend time and resources to remediate and/or shoulder the blame:

- February 17, 2025: "Customer requested to short check bag and became upset with [United] staff"

- August 7, 2024: "Customer became upset upon learning his bag could not be short-checked to any destination"

- June 6, 2024: "Customer was upset that he was required to check a bag with a hidden city ticket"

- June 4, 2024: "Customer was upset about bag being checked to final destination and not connection city"

- May 29, 2024: "Customer terminated travel in connection city and bag went to final destination. Customer was irate and threatening."

- April 24, 2024: "Customer became upset due to wanting to check bags to IAD, even though his itinerary stated FLL-IAD-LAS"

- March 19, 2024: "Customer using hidden city ticketing unhappy that his bag is not available at mid-point of itinerary"

- February 23, 2024: "Customer using hidden city ticketing upset because her bag is checked to final TICKETED destination"

- November 19, 2023: "Customer traveling on [basic economy] fares refusing to check bags to final destination as they were not planning on taking connecting flight"

- October 30, 2023: "Customer purchased a hidden-city ticket and was defiant about checking his carry-on bag"

- August 5, 2023: "Customer became argumentative with CS staff when advised her bag would be checked to final destination"

- June 17, 2023: "Customers caused flight delay when they required bag pull with no intention of taking connecting flight"

91. Additionally, for operational reasons, United sometimes has to change routing of flights. Because United believes that passengers are intending to fly to their final destination and not the layover city, United might change the flight in advance of the departure date so that the layover occurs in a different city. Again, if the passenger was attempting to end their journey in the layover city, they would be out of luck and stuck on a flight that was no longer going to their desired destination.

92. Self-transfer tickets also create serious issues. For example, when the first leg of a flight is cancelled or delayed due to weather, United accommodates passengers in accordance with its policies to assist them in reaching their final destination. In the case of a self-transfer itinerary, customers lose this critical protection and could be stranded in the layover city. United may not

know the customer's final destination (which may be booked on a different airline) or otherwise may not be able to accommodate the passenger on another United flight.

93.     When these harms occur, it is not Kiwi that is forced to expend time and resources remediating them—it is United. And it may not be Kiwi that is blamed for the passenger's poor experience—it may be United.

94.     In addition, the COC provides that, where a ticket is booked, held, purchased and/or used in violation of United's fare and ticket rules, United "has the right in its sole discretion to take all actions permitted by law," including but not limited to (a) invalidating the ticket, (b) permanently banning the passenger, (c) deleting any miles, points, credits or other benefits in or related to the passenger's MileagePlus loyalty program account, (d) revoking the customers MileagePlus status, if any, and (e) terminating the passenger's participation in the MileagePlus program. *See* Ex. 2, Rule 6.K. Kiwi does not disclose any of these risks to consumers.

95.     In addition to consumers, Kiwi also causes other third-party businesses to breach their contractual obligations to United. Any consolidator or travel agency who has authorized access to United fares and tickets is bound by the Booking and Ticketing Policy, and in some cases, party to other agreements with United. Under those agreements, the consolidator or travel agency may not provide unauthorized OTAs—including Kiwi—with access, in any way, to United's data or tickets.

96.     On information and belief, Kiwi knows that those agreements preclude Kiwi's access to this data and use of these tickets but nonetheless convinces and induces consolidators and agencies to violate their contractual obligations to United. This conduct, as with all Kiwi's misconduct, continues to harm United and its customers.

**D.    Kiwi Uses United's Valuable Trademarks Without Authorization and to Sell an Inferior Product.**

97.    Kiwi uses United's valuable trademarks in connection with its unauthorized sale of itineraries that include United flights to confuse and deceive passengers.

98.    For example, Kiwi displays United's valuable Globe Logo and other trademarks next to the flights it offers on its website:



99.    Kiwi's use of United's Globe Logo and other trademarks mimics in a nearly identical manner and method of display the use of the Globe Logo and United trademarks on legitimate third-party flight search engine websites such as kayak.com and authorized third-party agents such as Expedia.com:

**Kayak.com**



**Expedia.com**



100. On information and belief, Kiwi's use of the Globe Logo and other trademarks in a way that mimics the way the Globe Logo and United trademarks appear on legitimate third-party flight search engine websites such as kayak.com and authorized third-party agents such as Expedia.com is intentional.

101. Kiwi's use of the United Marks to market and sell United flights infringes the United Marks and diminishes their value because bookings through Kiwi generate negative

experiences for consumers. Booking on Kiwi.com can be more expensive than booking on the United Digital Platforms because Kiwi charges additional fees and imposes its own deceptive and harmful policies on consumers. Thus, Kiwi is improperly extracting data from the United website and trading on United's reputation and goodwill for its own commercial gain, and to United's detriment.

102.    United has received numerous complaints from customers who purchased United flights through Kiwi. These complaints, and United's investigations into the same, make clear that Kiwi is: (i) adding its own service fees to the price of United flights; (ii) misrepresenting United's policies to defraud customers into purchasing ancillary services from Kiwi and paying more for such services than they would otherwise be charged by United; (iii) failing to issue refunds to customers even after United has made the requested refunds to Kiwi; (iv) failing to provide customers with notices about schedule changes or delays; and (v) refusing to allow customers to change or cancel reservations.

### E.    Kiwi Uses Booking Methods That Deceive United and Harm Customers.

103.    To perpetuate and conceal its wrongful conduct, Kiwi uses methods of booking intended to deceive United, conceal consumers' information from United, and interfere with United's ability to communicate directly with the consumer.

104.    For example, Kiwi creates or uses email addresses that are not customers' actual email addresses when booking travel with United so that United may not be able to to contact customers directly. Similarly, even when customers book travel using a credit card, Kiwi provides false payment information to United, making it appear in United's internal systems that the customers paid with cash or a virtual credit card. Kiwi does this intentionally to obscure identifying information and prevent United from tracing the transaction back to the customer—or to Kiwi itself:

38

**How does Kiwi.com book trips?**

After you complete a booking with us, we make a reservation with the carriers on your behalf. To do this, we create a unique temporary email address and payment details for your booking to ensure we can manage your reservation, add extras, and alert you if anything changes.

> By checking the box before you confirm payment for your booking, you grant us permission to create these virtual details.

> According to the law, the carriers have to inform you about any cancellations or schedule changes. But when you book through us, you authorize us to receive all communication from the carriers on your behalf. So if we receive any important information from them, we'll let you know via email, SMS, push notification, or by contacting you directly.

In some cases we might also book your trip through various booking systems or through our partners, using our company accounts. On top of the above benefits, this helps us give you better prices.

105.     This tactic causes significant harm to both the customer and United. For example, if there is a schedule change or flight delay, United would ordinarily attempt to notify passengers via email, text message, or via the Mobile App. When Kiwi provides false contact information for customers, United's ability to communicate in this way is impaired.

106.     By improperly accessing United's systems to book the itinerary for its own commercial gain, and by providing United with false and misleading information to facilitate the transaction, Kiwi again violates United's agreements and harms United.

**F.     Kiwi Refuses to Cease its Wrongful Conduct.**

107.     Although Kiwi was at one time authorized to access and sell United fares, United revoked that authority and blocked Kiwi's access to United's data in August of 2023, after learning of the nature and extent of Kiwi's deceptive and harmful practices. Kiwi insisted, however, that that the parties could agree to terms acceptable to United that would allow Kiwi to act as an authorized OTA. At Kiwi's request, United temporarily restored Kiwi's access in November of 2023, while the parties discussed the terms of a potential commercial agreement.

108.     It became clear, however, that no acceptable agreement could be reached. Kiwi refused to agree that it would cease its deception of consumers and its marketing of prohibited itineraries. Indeed, at one point in the negotiations, Kiwi's founder expressly admitted to United's

Director of Distribution that Kiwi's business model is based on deceptively advertising low fares to consumers and then gouging the consumers with ancillary fees.

109.    Accordingly, in April of 2024, United once again revoked Kiwi's ticketing authority and blocked Kiwi's access to United's fare and schedule data. As described in this Complaint, however, Kiwi has evaded United's efforts and continued to access United's data and book United airfares without authorization.

110.    In October of 2024, United representatives met with Kiwi representatives in person to demand, among other things, that Kiwi cease: (i) scraping United data; (ii) illicitly gaining access to United data and tickets via consolidators; and (iii) selling United fares on its site. Kiwi refused, and its representatives attempted to leverage Kiwi's misconduct by stating that Kiwi would stop sourcing data and tickets from consolidators only if United entered into a formal commercial agreement with Kiwi. United declined to entertain Kiwi's threat, and Kiwi has continued its wrongful conduct.

111.    On October 24, 2024, United sent Kiwi a cease-and-desist letter demanding that it stop the following: (i) publishing United fares and flight schedules; (ii) marketing, advertising, and selling United airfares; (iii) accessing and/or using united.com for any commercial purpose; (iv) scraping and/or harvesting data from united.com; and (v) displaying and/or utilizing United's trademarks. *See* Ex. 4.

112.    The letter also emphasized Kiwi's violations of United's Booking and Ticketing Policy and the User Agreement, Kiwi's inducement of breaches of the Booking and Ticketing Policy and COC, and Kiwi's trademark violations. *Id*.

113.    Kiwi responded to United on November 6, 2024, refusing to acknowledge—but not refuting—any of its wrongful conduct. Instead, Kiwi insisted that United's demands reflected a

mere "misunderstanding" between the parties, and that all United had to do to stop Kiwi's misconduct was enter into a commercial agreement with Kiwi. United responded by making it clear there was no misunderstanding, that Kiwi's conduct was unauthorized and unlawful, and repeating its demand that Kiwi cease and desist. *Id.* Kiwi was undeterred and continues to engage in its wrongful conduct to this day.

114.    Kiwi's ongoing misconduct is not an isolated incident nor the product of any misunderstanding. Rather, it is part of a deliberate and well-documented pattern of unlawful conduct across the airline industry. Kiwi has repeatedly ignored contractual restrictions, cease-and-desist demands, and clear legal boundaries in order to sustain a business model built on unauthorized access to airline data, deceit of consumers, and the unauthorized sale of airfares.

115.    Indeed, United recently learned that Kiwi was using a United digital credit card—meant for use by authorized OTAs—to book United fares without authorization. When the credit card issuer inquired, Kiwi *admitted* it knew that it was not approved by United to use the card but did so anyway. Nonetheless, on information and belief, Kiwi attempted to justify its unauthorized conduct by falsely telling the credit card issuer that it was in active negotiations with United. That was a lie.

116.    Kiwi is undeterred even by court orders. When Southwest Airlines sued Kiwi for the same conduct that Kiwi perpetrates against United and others, *see Sw. Airlines Co. v. Kiwi.com, Inc.*, 3:21-CV-00098-E (N.D. Tex.), the court issued a preliminary injunction—and later a permanent injunction—after finding that Kiwi violated Southwest's website terms and conditions and caused irreparable harm by scraping fare data from Southwest's website, displaying and publishing Southwest's flight or fare information, and selling Southwest tickets without authorization.

117.     While Kiwi ceased perpetrating its misconduct against Southwest in response to the injunction orders, Kiwi continues to engage in materially identical conduct when it comes to other airlines, including United. Kiwi still scrapes fare data, bypasses airline controls, and sells airfares without authorization. Its persistence in these behaviors, even after a federal court found them unlawful in a virtually identical context, demonstrates not only the calculated nature of its misconduct but also its indifference to judicial authority. United is left with no meaningful option but to seek judicial intervention to protect its systems, customers, and brand from ongoing harm.

118.     United has dedicated significant company time and resources to investigate Kiwi's wrongful conduct and its continued unauthorized access to United's data.

119.     Kiwi's conduct is likely to cause, and has caused, confusion. Kiwi is misleading and deceiving the public and this has led (and will continue to lead) the public to wrongly attribute the services offered by Kiwi to United and/or to be misled and confused about the nature of United's offerings and policies.

120.     Kiwi's conduct is harming United's brand, business reputation, and goodwill for which United has no adequate remedy at law.

## CAUSES OF ACTION

## COUNT I: False Advertising (15 U.S.C. § 1125(a)(1)(B))

121.     United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

122.     Kiwi has made and continues to make false and misleading statements on its website about its own and United's services.

123.     For example, Kiwi's website claims that Kiwi allows customers to "[b]ook cheap flights other sites simply can't find." Kiwi also states that, because Kiwi is purportedly able to find

"cheap travel options other search tools can't," Kiwi customers "will never have that nagging doubt they've missed out on a better deal elsewhere." These statements falsely communicate to customers that Kiwi offers the cheapest available flights, when, in fact, customers can often get a better deal by booking directly with the airlines.

124.    On August 6, 2025, for example, the cheapest fare that Kiwi offered for tickets on the United flights shown on Kiwi's website was $199, and that fare (according to Kiwi) did not include the ability for the passenger to bring a carry-on bag.

125.    At the very same time, however, the identical flights were available on united.com for $117. And the customer could book a flight directly through United, *with* the ability to bring a carry on bag, for $187—less than Kiwi's purportedly "cheapest" baggage option of $290.

126.    Kiwi has made and continues to make false and misleading statements and omits material facts concerning the services it markets and sells, including the risk that customers who use hidden-city ticketing and other prohibited itineraries may face cancellation, denial of boarding, forfeiture of loyalty program benefits, or other penalties from United.

127.    Kiwi also makes false and misleading statements and omits material facts regarding fees charged to consumers, including but not limited to baggage fees, so-called "disruption protection," seat assignment fees, and fees associated with refund options.

128.    Kiwi also makes false and misleading statements and omits material facts from consumers by purporting to override United's refund policies, providing inaccurate information about refunds, and failing to refund consumers even when Kiwi receives a refund from United.

129.    Kiwi's false and misleading statements were made (and continue to be made) in commercial advertising—including on Kiwi's website.

43

130. By making these false and misleading statements, Kiwi has caused the false and misleading statements to enter interstate commerce.

131. Kiwi's false and misleading statements and material omissions are likely to deceive customers who believe they are buying tickets on United flights from an authorized OTA, at the lowest available price, and that the tickets they are purchasing offer the same level of service and amenities at the same or lower cost as if they purchased directly from United or other authorized sources.

132. Kiwi's false and misleading statements and material omissions are intended to materially influence a consumer's purchasing decision. Indeed, Kiwi's entire business model is based on tricking customers into purchasing what Kiwi claims are the cheapest available travel options and then charging higher fares, and/or excessive fees for ancillary services such as checked baggage.

133. United has suffered and will continue to suffer damage to its reputation and goodwill as a result of Kiwi's false and misleading statements and material omissions.

134. Kiwi's actions constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

135. The intentional nature of Kiwi's actions entitles United to recover profits, damages, and attorney fees under 15 U.S.C. § 1117(a).

136. Kiwi's actions have caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi will continue to make false and misleading statements about its own and United's services, and United will continue to suffer harm to its reputation and goodwill as a result, unless Kiwi is enjoined by the Court pursuant to 15 U.S.C. § 1116. United is therefore entitled to injunctive relief.

## COUNT II: Trademark Infringement (15 U.S.C. § 1114)

137.     United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

138.     United is the registered owner of the United Marks. In fact, many of the United Marks are incontestable under 15 U.S.C. § 1065 due to United's continuous use of the United Marks in commerce.

139.     Kiwi has used and is using the United Marks in commerce in connection with the sale, offering for sale and/or advertising of services—specifically, the sale of travel itineraries that include United flights.

140.     Kiwi's use of the United Marks is likely to cause confusion, mistake, and/or to deceive consumers as to the affiliation, connection, sponsorship, approval, or association of Kiwi with United, when, in fact, no such relationship exists.

141.     Kiwi's acts constitute infringement of one or more of the United Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

142.     United has sustained injuries, damages, and losses due to Kiwi's infringement of the United Marks.

143.     Kiwi acted with knowledge of United's ownership of the United Marks and with a deliberate intent or willful blindness to unfairly benefit from the goodwill symbolized by the marks. Kiwi has willfully infringed one or more of the United Marks, and the intentional nature of its actions makes this case exceptional under 15 U.S.C. § 1117(a).

144.     United has suffered and will continue to suffer irreparable harm because of Kiwi's infringement of the United Marks. Kiwi will continue to infringe the United Marks unless enjoined

by this Court pursuant to 15 U.S.C. § 1116, and United has no adequate remedy at law for such infringement.

### COUNT III: False Affiliation or Endorsement (15 U.S.C. § 1125(a)(1)(A))

145.    United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

146.    Kiwi is displaying and using the United Marks in interstate commerce via its website and mobile app. In particular, Kiwi is displaying the United Marks so as to purport to be an online travel agency for United even though it has no authorization to sell United flights.

147.    Kiwi's conduct has caused and is likely to cause confusion, mistake, and/or to deceive consumers as to the affiliation, connection, or association of Kiwi with United, including whether United sponsors or approves Kiwi's sale of itineraries that include United flights, in violation of 15 U.S.C. § 1125(a)(1)(A).

148.    The intentional nature of Kiwi's actions entitles United to recover profits, damages, and attorney fees under 15 U.S.C. § 1117(a).

149.    Kiwi's actions have caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi will continue to misrepresent and mislead the public that its services are in some manner connected with, sponsored by, affiliated with, related to, or approved by United, unless enjoined by the Court pursuant to 15 U.S.C. § 1116. United is therefore entitled to injunctive relief.

150.    United has also sustained injuries, damages, and losses from Kiwi's actions, including financial losses suffered as a result of the false association of the United Marks, corrective costs to rectify misleading information, and the damage to United's reputation.

## COUNT IV: Trademark Dilution (15 U.S.C. § 1125(c))

151.    United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

152.    By virtue of United's long and continuous use in commerce, the United Marks have become, and continue to be, famous and distinctive within the meaning of 15 U.S.C. § 1125(c)(2).

153.    Kiwi's unauthorized use in commerce of the United Marks as alleged herein began after the United Marks became famous.

154.    Kiwi's use of the United Marks as alleged herein is likely to cause dilution of the United Marks by tarnishment through the association of the United Marks with Kiwi's deceptive practices and sale of inferior services that result in negative customer experiences.

155.    Kiwi has acted and is acting deliberately and willfully in an attempt to trade upon the goodwill associated with the United Marks with full knowledge of United's rights in those marks.

156.    Kiwi's actions have caused and, unless enjoined by this Court, will continue to cause irreparable injury to United for which it has no adequate remedy at law. United is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT V: Breach of Contract (User Agreement)

157.    United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

158.    At all relevant times, the User Agreement has been accessible by links on united.com, including on the homepage.

159.    The User Agreement states that "[t]his website is offered to the User conditioned on acceptance by the User ('User' or 'you') without modification of the terms, conditions, and

notices contained herein. By accessing and using this website, the User agrees to be bound to all such terms, conditions, and notices. . . .”

160. Accordingly, Kiwi's use of united.com is and was governed by and subject to the User Agreement. Because Kiwi accesses and uses united.com in order to complete and/or confirm the booking of United tickets that customers purchase through Kiwi's website, the User Agreement is a valid contract binding on Kiwi.

161. As a party to the User Agreement, United is entitled to sue for any breach of that agreement. United has met all conditions precedent to such a claim and has otherwise complied with its obligations under the User Agreement.

162. Among other things, the User Agreement, Ex. 1, contains the following provisions:

- "Without limitation, User shall not make any speculative, false or fraudulent purchase or reservation, or any reservation in anticipation of demand."

- "User represents and warrants that he or she possesses the legal right and ability to enter into this Agreement and to use this website in accordance with all terms and conditions herein."

- "This website is for the User's personal, noncommercial use only. User agrees not to modify, copy, alter, distribute, transmit, display, perform, reproduce, publish, license, create derivative works from, transfer, or sell any information, software, products or services obtained from this website without United's prior written permission."

- "User agrees not to use any robot, spider, other automatic device, or manual process to monitor or copy this website or the content contained therein or for any other unauthorized purpose without United's prior written permission."

- "User is not permitted to use the[] [United] Marks without United's prior written consent[.]"

163. United has not provided permission to Kiwi for any prohibited use of united.com, as required under the User Agreement. To the contrary, United has demanded that Kiwi cease and desist from engaging in such prohibited use of united.com.

164.    Accordingly, Kiwi's access and use of united.com violates the User Agreement in at least the following ways:

- Using the United website to make speculative, false or fraudulent purchases and/or reservations;

- Using the United website for commercial use;

- Using the United website to modify, copy, alter, distribute, transmit, display, perform, reproduce, publish, transfer, and sell derivative products or services;

- Monitoring and/or copying the United website and the content contained therein for an unauthorized purpose; and

- Using the United Marks without United's written consent.

165.    Kiwi's misconduct is ongoing and continues to this day.

166.    Kiwi's actions have caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi has demonstrated time and time again that it will continue to breach the User Agreement and harm United unless enjoined by the Court. These ongoing breaches are causing and will continue to cause harm to United that cannot be fully addressed by damages because the nature of the loss, including ongoing and future losses, makes damages difficult to calculate. United is therefore entitled to injunctive relief.

167.    In addition, the User Agreement provides that "[a]s a condition of use of this website, the User agrees to indemnify United and its suppliers from and against any and all liabilities, expenses (including attorney's fees) and damages arising out of claims resulting from User's use of this website, including without limitation . . . any claims alleging facts that if true would constitute a breach by User of this Agreement." United is therefore also entitled to its actual damages suffered from Kiwi's breaches in an amount to be proven at trial.

**COUNT VI: Breach of Contract (Booking and Ticketing Policy)**

168.     United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

169.     United's Booking and Ticketing Policy, applies to "Any travel agency, Accredited Subscriber, Non-Accredited Subscriber, CTD, CRS/GDS subscriber, and any other person or entity accessing United's internal reservation system content via the Internet or any other electronic means." Ex. 4 at Article I and Article II, ¶ 37.

170.     Accordingly, Kiwi's use of the United website is and was governed by and subject to the Booking and Ticketing Policy. Because Kiwi is a travel agency and it accesses and uses the United website to complete and/or confirm the booking of United tickets that customers purchase through Kiwi's website, Kiwi is bound by the Booking and Ticketing Policy. Additionally, by its "continued booking and/or sale of air transportation on United," Kiwi agreed to be bound by "the terms and conditions set forth in" the Booking and Ticketing Policy. *Id.* at Article VII, ¶ 1.

171.     As a party to the Booking and Ticketing Policy, United is entitled to sue for any breach of that agreement. United has met all conditions precedent to such a claim and has otherwise complied with its obligations under the Booking and Ticketing Policy.

172.     United's Booking and Ticketing Policy prohibits parties from engaging in "Prohibited Practices," which include, utilizing "Hidden Cities/Points Beyond Ticketing, Impossible/Illogical Booking, No-Show, Off Plating and Throwaway Ticketing, circumvention of United's Married Segment control logic, United inventory access violations and any violation of United's Contract of Carriage." *Id*. at Article II, ¶ 31.

173.     The Booking and Ticketing Policy also provides that Kiwi "shall not, without United's prior written consent, redistribute, share, or in any other manner make United's content

of any kind available (collectively, "Redistribute"), directly or indirectly, to any: (i) GDS, (ii) OTAs/travel agencies, (iii) Metasearch Site or (iv) Unsuitable Web Page (each a "Restricted Entity"). Travel Service Provider shall not, without United's prior written consent, accept United's content from any Restricted Entity, nor shall Travel Service Provider allow Restricted Entities to link to the Travel Service Provider for United's content."

174.    Accordingly, Kiwi's access and use of the United website violates the Booking and Ticketing Policy in at least the following ways:

- Using the United website to make speculative, false or fraudulent purchases and/or reservations, including hidden-city and self-transfer itineraries;

- Using the United website to facilitate breaches of the COC by consumers;

- Redistributing United's content on Kiwi.com; and

- Accepting United's content from "Restricted Entities" as defined in the Booking and Ticketing Policy.

175.    Kiwi's misconduct is ongoing and continues to this day.

176.    Kiwi's actions have caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi has demonstrated time and time again that it will continue to breach the Booking and Ticketing Policy and harm United unless enjoined by the Court. These ongoing breaches are causing and will continue to cause harm to United that cannot be fully addressed by damages because the nature of the loss, including ongoing and future losses, makes damages difficult to calculate. United is therefore entitled to injunctive relief.

177.    In addition, United has sustained injuries and damages, including financial losses and the erosion of its reputation and customer goodwill. These injuries and damages include, but are not limited to, lost profits and damages related to efforts used to mitigate Kiwi's. Accordingly,

United is entitled to its actual damages suffered from Kiwi's breaches in an amount to be proven at trial.

## COUNT VII: Tortious Interference with Contract

178.    United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

179.    During all relevant times, United's COC provided that "[b]y purchasing a ticket or accepting transportation, the passenger agrees to be bound by these controlling terms of this [COC], and no covenants at law or in equity shall be implied or incorporated." Ex. 3. As a result, United's COC constitutes a valid contract between United and any passengers who purchase a ticket on a United flight.

180.    The COC prohibits "[a]ny practice that United believes, in its sole discretion, is exploitative, abusive or that manipulates/bypasses/overrides United's fare and ticket rules," including "Hidden Cities Ticketing." *See id.* at Rule 6.J(1)-(2).

181.    Kiwi's business is designed to identify, market, and sell itineraries that it knows are prohibited by United's COC, including "Hidden Cities Ticketing." *See id.*

182.    Kiwi also facilitates customers hiding the true nature of their itinerary and thereby breaching their contract with United.

183.    In addition to its contract with passengers, United has contracts with third parties that allow those third parties to access United flight and itinerary data and resell United tickets for certain limited purposes, but which prohibit those third parties from reselling the tickets to unauthorized agencies (such as Kiwi) and from providing or allowing those unauthorized agents access to said data.

184.    Those third parties are also bound by United's Booking and Ticketing Policy, which applies to "Any travel agency, Accredited Subscriber, Non-Accredited Subscriber, CTD,

CRS/GDS subscriber, and any other person or entity accessing United's internal reservation system content via the Internet or any other electronic means." Ex. 4 at Article I and Article II, ¶ 37. And United's Booking and Ticketing Policy—like its COC— prohibits those third parties from engaging in "Prohibited Practices," which include, among other things, utilizing "Hidden Cities/Points Beyond Ticketing, Impossible/Illogical Booking, No-Show, Off Plating and Throwaway Ticketing, circumvention of United's Married Segment control logic, United inventory access violations and any violation of United's Contract of Carriage." *Id*. at Article II, ¶ 31.

185.    The Booking and Ticketing Policy also prohibits these third parties from redistributing United's content to Kiwi.

186.    Kiwi is willfully, knowingly, and intentionally interfering with United's contracts with those third parties by inducing those third parties to redistribute United's content to Kiwi so that Kiwi can engage in Prohibited Practices, thereby inducing those third parties to breach their contractual obligations to United and the United Booking and Ticketing Policy.

187.    Kiwi has carried out its tortious interference in furtherance of an unlawful scheme to market and sell United flights at inflated prices without authorization.

188.    Kiwi's conduct is willful, deliberate, malicious, and fraudulent as described more fully above, thus entitling United to punitive damages.

189.    Kiwi's tortious interference has caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi has clearly demonstrated that it will continue to induce passengers and third parties to breach their agreements with United unless enjoined by the Court. These ongoing breaches are causing and will continue to cause harm to United that cannot be fully addressed by damages because the nature of the loss, including ongoing

and future losses, makes damages difficult to calculate. United is therefore entitled to injunctive relief.

190.    In addition, United has sustained injuries and damages, including financial losses and the erosion of its reputation and customer goodwill. These injuries and damages include, but are not limited to, lost profits and damages related to efforts used to mitigate Kiwi's interference with United's customer and third-party contracts.

### COUNT VIII: Uniform Deceptive Trade Practices Act (815 ILCS 510/2)

191.    United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

192.    Kiwi has, in the course of its business, engaged in deceptive trade practices within the meaning of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

193.    Kiwi has represented that it is authorized to sell or facilitate the sale of United tickets, despite lacking any contractual relationship or authorization from United to do so.

194.    Kiwi has caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of the tickets and related travel services it promotes and sells, in violation of 815 ILCS 510/2(a)(2).

195.    Kiwi has caused confusion or misunderstanding as to affiliation, connection, or association with United and as to the approval or sponsorship of Kiwi's services by United, in violation of 815 ILCS 510/2(a)(3).

196.    Kiwi uses misleading representations of fact concerning the nature of the tickets it facilitates, including by marketing tickets that violate the terms of United's Conditions of Carriage.

197. Kiwi's conduct is willful and part of a broader pattern of deceptive marketing practices and other conduct designed to mislead consumers, create confusion, and improperly capitalize on United's brand and services.

198. United has suffered and continues to suffer irreparable harm to its reputation, brand integrity, customer relationships, and revenue as a direct result of Kiwi's conduct.

199. Pursuant to 815 ILCS 510/3, United is entitled to injunctive relief prohibiting Kiwi from continuing its unlawful practices, as well as costs and reasonable attorneys' fees.

## COUNT IX: Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2)

200. United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

201. Kiwi has engaged in deceptive acts and practices in the conduct of trade and commerce in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2.

202. Kiwi has misrepresented to consumers that it is authorized to sell or promote United airline tickets, when it is not.

203. Kiwi has made false and deceptive statements and omitted material facts concerning its marketing and sales practices, including the risk that customers who use hidden-city ticketing and other prohibited itineraries may face cancellation, denial of boarding, forfeiture of loyalty program benefits, or other penalties from United.

204. Kiwi has also made false and deceptive statements and omitted material facts regarding fees charged to consumers, including but not limited to baggage fees, so-called disruption protection, seat assignment fees, and fees associated with refund options.

205. Kiwi has also made false and deceptive statements and omitted material facts from consumers by purporting to override United's refund policies, providing inaccurate information about refunds, and failing to refund consumers even when Kiwi receives a refund from United.

206. Kiwi's misrepresentations and omissions have the tendency and capacity to mislead a substantial number of consumers.

207. Kiwi's conduct is part of a pattern of unfair and deceptive business practices that offends public policy; is immoral, unethical, and oppressive; and causes substantial injury to both consumers and United.

208. United, although not a direct consumer, has standing to bring a claim under the ICFA because it has suffered actual damages as a result of Kiwi's deceptive conduct that is directed toward consumers but foreseeably harms United.

209. As a direct and proximate result of Kiwi's violations of the ICFA, United has suffered economic and reputational harm, including but not limited to loss of revenue, brand dilution, increased customer service costs, and damage to its reputation.

210. In addition, Kiwi's actions have caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi has demonstrated that it will continue to mislead and defraud the public unless enjoined by the Court. Further, this ongoing fraud is causing and will continue to cause harm to United that cannot be fully addressed by damages because the nature of the loss, including ongoing and future losses, makes damages difficult to calculate. United is therefore entitled to injunctive relief.

211. Accordingly, United is entitled to injunctive relief, actual damages, punitive damages, and its reasonable attorneys' fees and costs pursuant to 815 ILCS 505/10a.

## COUNT X: Common Law Fraud

212.    United incorporates by reference and realleges the preceding allegations as though fully set forth herein.

213.    Kiwi has engaged in a deliberate and fraudulent scheme to deceive United in connection with the booking of air travel on United flights.

214.    When booking flights on behalf of consumers through United's platform, Kiwi knowingly and intentionally supplies false and misleading information to United, including falsified email addresses and payment data.

215.    Specifically, Kiwi generates and inputs fabricated email addresses that do not correspond to the actual passengers traveling on the booked itineraries. Kiwi does this in furtherance of its fraudulent behavior, including for the purpose of preventing United from directly contacting passengers, and its conduct obstructs United's customer service operations and undermines the passenger experience.

216.    In addition, when customers use credit cards to purchase United tickets through Kiwi's platform, Kiwi manipulates the transaction data submitted to United to make it appear that the customer paid with cash. As a result, United's internal records misidentify the method of payment and omit the identity of the true payor, including the name associated with the credit card used.

217.    Kiwi's intentional falsification of both contact and payment information is designed to conceal the true identity of Kiwi's customers and prevent United from discovering Kiwi's wrongful conduct.

218. Kiwi's concealment of customer information is central to its business model, which seeks to exploit United's services and brand while interfering with United's ability to manage its own customer relationships.

219. United justifiably relied on the accuracy and integrity of the passenger and payment data submitted through its booking channels, as United must rely on that information for critical functions including customer service, security screening, regulatory compliance, and fraud prevention.

220. As a direct and proximate result of Kiwi's fraudulent conduct, United has suffered and continues to suffer injury, including but not limited to impaired customer service capabilities, increased operational burdens, reputational harm, and lost business opportunities. Kiwi's conduct therefore constitutes common law fraud under the laws of the State of Illinois.

221. Kiwi's actions have caused and will continue to cause irreparable injury to United for which it has no adequate remedy at law. Kiwi has demonstrated that it will continue to defraud United unless enjoined by the Court. This ongoing fraud is causing and will continue to cause harm to United that cannot be fully addressed by damages because the nature of the loss, including ongoing and future losses, makes damages difficult to calculate. United is therefore entitled to injunctive relief.

222. Accordingly, United is entitled injunctive relief, actual damages, and punitive damages, in an amount to be proven at trial.

## APPLICATION FOR INJUNCTIVE RELIEF

223. As set forth above, Kiwi's actions have caused, and are continuing to cause, substantial and irreparable harm to United's operations, contractual relationships, brand reputation, and customer goodwill—harm for which there is no adequate remedy at law. Kiwi's ongoing

unauthorized access to United's proprietary systems, misappropriation of fare and inventory data, inducement of breaches of United's contracts with consumers and business partners, and pervasive use of fraudulent and deceptive practices are part of a deliberate scheme to exploit United's investment in its services and reputation. In addition, Kiwi's unauthorized use of United's trademarks compounds this harm by misleading consumers into believing that Kiwi is affiliated with or authorized by United. If not enjoined, Kiwi will continue to disrupt United's operations, interfere with its contracts, confuse and mislead the public, and erode United's standing in the marketplace. Injunctive relief is not only necessary to prevent further injury to United, but also to protect consumers and the public interest.

224.    Accordingly, United requests that Kiwi, along with any companies owned or controlled by Kiwi directly or indirectly, their employees, representatives, agents, members, and all others acting in concert with them, be permanently enjoined from: (1) either directly or indirectly accessing or extracting United's flight and fare information from the United website; (2) publishing United flight and fare information on any website, including Kiwi.com or elsewhere; (3) marketing, advertising, or selling United airfares; (4) making false or misleading statements about Kiwi's and/or United's services; (5) accessing or using United's website and data in a manner that breaches or causes another to breach United's User Agreement, Booking and Ticketing Policy, or Contract of Carriage; and (6) using the United Marks, or any other mark, word, or name confusingly similar to or including those marks, in the ordinary course of business.

## PRAYER FOR RELIEF

WHEREFORE, United demands judgment against Kiwi as follows:

1.    That Kiwi and its officers, members, managers, affiliates, agents, employees, servants, representatives, any entities owned or controlled by them, and all persons acting under

or in concert with them, be permanently enjoined from: (1) either directly or indirectly accessing or extracting United's flight and fare information from the United website; (2) publishing United flight and fare information on any website, including Kiwi.com or elsewhere; (3) marketing, advertising, and selling United airfares; (4) making false or misleading statements about Kiwi's and/or United's services; and (5) accessing or using United's website and data in a manner that breaches or causes another to breach United's User Agreement, Booking and Ticketing Policy, or Contract of Carriage.

2. That Kiwi be enjoined from using the United Marks, or any other mark, word or name confusingly similar to or including those marks, in the ordinary course of business;

3. That Kiwi be required to account for and pay to United all profits and benefits it derived as a result of the wrongful conduct complained of herein;

4. That Kiwi be required to pay to United actual, consequential, and compensatory damages sustained as a result of the wrongful conduct complained of herein;

5. That Kiwi be required to pay increased damages due to its willful infringement;

6. That Kiwi be required to pay punitive damages;

7. That Kiwi be required to pay pre-judgment and post-judgment interest at the highest rates allowed by law;

8. That Kiwi be required to pay United's costs and attorney's fees incurred in this action; and

9. For such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff, United Airlines, Inc., hereby demands a trial by jury on all issues so triable.

Dated: August 12, 2025

Respectfully submitted,

/s/ *Sondra A. Hemeryck*
Sondra A. Hemeryck
Eli J. Litoff
Steven E. Vogel
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn Street, Suite 2200
Chicago, Illinois 60603
312.471.8700
shemeryck@rshc-law.com
elitoff@rshc-law.com
svogel@rshc-law.com

*Attorneys for Plaintiff United Airlines, Inc.*